

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
~~XXXXXXXXXXXXXXXXXXXXX~~
~~WILL WILSON~~
~~ATTORNEY GENERAL~~

AUSTIN 11, TEXAS

Honorable Jos. B. Dart
County Attorney
Kendall County
Boerne, Texas

Dear Sir:

Opinion No. O-3964
Re: Necessity for certificate
or permit for operation as
a motor carrier. Construc-
tion of Article 911b, V.T.
C.S.

We are in receipt of your recent request for an opin-
ion in which you submit the following questions:

"The highway between San Antonio and Kerrville
is intersected by first, Leon Springs, an unincor-
porated town, then by Boerne, an incorporated city,
then by Comfort, an unincorporated town, finally
winding up in Kerrville, an incorporated city. In
your opinion would the fact that the unincorporat-
ed towns lie between two or more incorporated cities,
towns and villages' to the extent that the carrier
could operate anywhere along this route just so
long as he kept an unincorporated town between him-
self and one of the incorporated cities, or is the
fact that the unincorporated towns lie between the
incorporated cities merely incidental and has no
bearing on the status of the highway as between two
or more incorporated cities, towns or villages?"

"Paragraph (h) of Art. 911b, R.C.S., reads:
'The term "contract carrier" means any motor car-
rier as hereinabove defined transporting property
for compensation or hire over any highway in this
State other than as a common carrier.'

"I would take this paragraph to mean a motor carrier operating over no fixed route and with no fixed schedule and not holding himself out as a carrier for the general public but taking certain jobs of hauling here and there as opportunity offers, being under no obligation to haul except when he felt like and for whom he pleased; a private carrier as distinguished from a 'common carrier.'

"My interpretation of this paragraph would be that this sort of a carrier would have a permit to operate on any public highway, and that such permit would entitle him to operate when and where he pleased."

We believe your first question is answered by our opinions No. 0-1592, 0-1497, 0-3535, 0-3449 and 0-3449-A, copies of which are enclosed herewith.

Section 1 (g) of Article 911b, V.T.C.S., (H.B. 335, Acts 1931) defines a "motor carrier" as follows:

"(g)  The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lesses, receivers or trustees appointed by any court whatsoever, owning, controlling, managing, operating or causing to be operated any motor propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided, that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns."

Applying this statutory definition to the facts presented in your second question it will be noted that it does not depend upon whether the operation is over a fixed route, or with fixed schedules or whether the carrier holds himself out to haul for the public at large.  The operator is a "motor carrier" when

(1) property is transported, (2) in a motor-propelled vehicle, (3) for compensation or hire, and (4) over any highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns, or villages is traversed.

The operator you have described clearly comes within the definition of a "motor carrier," assuming the above listed elements of the definition are present.

Section 2 of Article 911b, V.T.C.S., makes all motor carriers as defined in Section 1, subject to the provisions of the Act.

Section 3 of said Act reads:

"No motor carrier shall, after this Act goes into effect, operate as a common carrier, without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity requires such operation. No motor carrier shall, after this Act goes into effect, operate as a contract carrier without having first obtained from the Commission a permit so to do, which permit shall have in all things complied with the requirements of this Act."

Section 1(h) of Article 911b, V.T.C.S., defines a "contract carrier" as follows:

"The term 'contract carrier' means any motor carrier as herein above defined transporting property for compensation or hire over any highway in this State other than as a common carrier."

It will thus be seen that every "motor carrier" is either a "common carrier" or a "contract carrier." If a common carrier a "certificate" is required, and if a contract carrier a "permit" is required, to render the operation lawful.

The facts presented are not sufficiently detailed for us to determine whether the motor carrier you describe should have a certificate or permit. If he hauls for whom he pleases, as the opportunity is offered, his operations might very well

be to such an extent that he would in fact be a common carrier. Section 6 of the motor carrier act requires the applicant for a contract carrier permit to set forth in his application "the nature of the transportation in which the applicant wishes to engage stating substantially the territory to be covered by the operation and including the condition and character of the roads over which the transportation is to be performed."

The permit issued to a contract carrier by the Railroad Commission describes the territory or highways, the service to be rendered and names the contracting parties the permit holder is authorized to serve. It has been the practice of the Commission to limit a contract carrier to five contracts based upon the proposition that when such a motor carrier serves a greater number of shippers he in fact becomes a common carrier.

The authorization of a common carrier or contract carrier is fully set out in his certificate or permit and if a question arises concerning the scope of a motor carrier's authorized operations we suggest that his certificate or permit be examined. In this connection we call attention to Section 16 (e) which requires that an indentification card containing certain information be displayed in the cab of each motor vehicle.

Because of the nature of your second question we are unable to give a categorical answer but trust that the foregoing sufficiently answers your question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          Cecil C. Cammack
                 Assistant

CCC:db -- PAM

Enclosures

APPROVED Sep 23 1941
GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
BY BWB, CHAIRMAN